# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Dominion Carolina Gas Transmission, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> 0.945 Acres, in Richland County, South Carolina located on Parcel R39100-02-02; WILLIE PATTERSON, LOVELESS COMMERCIAL CONTRACTING, INC., SOUTH CAROLINA COMMUNITY BANK, AND TD BANK, N.A., AS SUCCESSOR BY MERGER WITH CAROLINA FIRST BANK, <br><br> Defendants. | Case No: 3:16-CV-01924-JMC |

## ORDER GRANTING PLAINTIFF'S MOTION FOR IMMEDIATE POSSESSION

Plaintiff Dominion Carolina Gas Transmission, LLC ("DCGT") has moved for immediate possession of the easements sought in the Complaint in this matter. After considering the motion, the memorandum in support, and the attached affidavits of Michael Ferguson and Metrick Houser, the Court grants DCGT's request pursuant to *E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808 (4th Cir. 2004) and its progeny as set forth below.

## FACTUAL BACKGROUND

DCGT is an interstate natural gas company as defined by the Natural Gas Act ("NGA"). 15 U.S.C. § 717a(6); *see also* Ferguson Affidavit at ¶ 8. As such, DCGT is subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC") and is qualified to, among other things, construct and operate interstate natural gas transmission pipelines. 15 U.S.C. § 717, *et seq.*; Ferguson Affidavit at ¶ 8.

1

This case arises from DCGT's exercise of its eminent domain powers pursuant to the NGA, 15 U.S.C. § 717, *et seq*., and the applicable FERC Certificate order, which is attached to the Ferguson Affidavit as Exhibit A. DCGT brought this action seeking certain easements it requires in connection with its Eastover pipeline project ("Project"). DCGT has been unable to reach an agreement as to the defendant parcels and landowners in this action, each of which is listed below (collectively, "Landowners").

The Landowners own or hold interests in real property located in Richland County, South Carolina described as Willie L. Patterson, TMS # R39100-02-02 (the "Property). Ferguson Affidavit at ¶¶ 4-7. DCGT seeks easements over the Property in connection with the Project as shown in Exhibits C & D to the Complaint. *Id.* at ¶ 10.

The FERC Certificate order authorizes DCGT to construct and operate the Project, an approximately 28-mile long pipeline and appurtenant facilities serving an industrial customer in South Carolina. *Id.* at Ex. A. That construction process necessarily requires access to all 126 involved parcels, including those belonging to the defendant landowners. *Id.* at ¶ 10. "DCGT's construction plan called for it to complete all construction by September 1, 2016, to meets its customer's in-service date." *Id.* at ¶ 11. That deadline has been extended, and DCGT now contemplates a construction completion date of November 1, 2016. *Id*. The deadline was chosen to make sure that DCGT can meet its customer's in-service deadline, which was set to reduce emissions and comply with federal environmental deadlines. *Id*. at ¶ 12. "In order to comply with its current construction schedule, DCGT must have immediate possession of the properties at issue so it can commence construction and meet its deadline." *Id*. at ¶ 11.

## STANDARD OF REVIEW

The Fourth Circuit has held that a court may use its equitable powers to grant a preliminary injunction awarding immediate possession to a natural gas company if the court determines that

the company has the right to condemn the property. *Sage*, 361 F.3d 808 (4th Cir. 2004). "[O]nce a district court determines that a gas company has the substantive right to condemn property under the NGA, the court may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction." *Id.* at 828. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Columbia Gas Transmission, LLC v. 252.071 Acres More or Less,* 2016 WL 1248670, at *12 (D. Md. Mar. 25, 2016) (applying test for preliminary injunction in case seeking immediate possession under the NGA). "The Fourth Circuit no longer recognizes a 'flexible interplay' among these criteria. Instead, each requirement must be fulfilled as articulated." *Occupy Columbia v. Haley*, 866 F. Supp. 2d 545, 552 (D.S.C. 2011).

## DISCUSSION

### I. Likelihood of Success on the Merits

This Court has granted partial summary judgment to DCGT with respect to its right to condemn the requested easements. Thus, DCGT has already succeeded on the merits of this issue.

### II. Irreparable Harm

With respect to irreparable harm, the Ferguson Affidavit establishes the following:

> 10.     DCGT has received a FERC Certificate order authorizing it to construct and operate the approximately 28 mile pipeline and appurtenant facilities in order to serve an industrial customer in South Carolina. That construction process necessarily requires access to all 126 involved parcels, including those belonging to the defendant landowners. The specific easements sought with respect to the properties at issue are depicted in Exhibits C-S to the Complaint in the above captioned action.
>
> 11.     DCGT's construction plan called for it to complete all construction by September 1, 2016, to meets its customer's in-service date. However, DCGT now contemplates a construction completion date of November 1, 2016. In order to

> comply with its current construction schedule, DCGT must have immediate possession of the properties at issue so it can commence construction and meet its deadline.
>
> 12. The construction deadline was selected to ensure that DCGT can meet its customer's in-service deadline, which is needed in order for the customer to comply with federal environmental regulations and to meet its ongoing efforts to further reduce emissions. Further delay also will cause financial harm to both DCGT and its customer.
>
> 13. Construction practices dictate that the Project be constructed using linear construction. It is not practical to construct the Project in short segments interrupted by landowners who have not yet reached an agreement with DCGT. Skipping properties requires relocating all of the construction equipment and personnel (both of which are extensive) and then having to bring them back later. This also results in increased inconvenience for all landowners along the Project corridor, and increases the Project costs. In addition, more movement of people and equipment on and off of the Project route and onto roads and highways equates to more potential for injury to contractor personnel as well as the public. For these reasons, immediate possession is required to ensure an efficient construction process and minimal disruption for all involved. In addition, the potential for inclement weather is increased if the Project is delayed. Summer and early fall are the preferable seasons for pipeline construction and any delay could jeopardize DCGT's ability to finish the Project on time.
>
> 15. In addition, the potential for inclement weather is increased if the Project is delayed. Summer and early fall are the preferable seasons for pipeline construction and any delay could jeopardize DCGT's ability to finish the Project on time.

Ferguson Affidavit at ¶¶ 10-13, 15. The Court finds these statements to be credible and further finds that delayed possession of the requested easements would delay the entire project and result in additional complication and cost to both DCGT and its customer. Moreover, any delay would render DCGT's customer less able to meet federal environmental standards and to reduce its emissions as set forth in the affidavit of Metrick Houser.

Courts around the Fourth Circuit have found these factors to present a sufficient showing of "irreparable harm." *Columbia Gas Transmission, LLC v. 252.071 Acres More or Less*, 2016 WL 1248670, at *17 (D. Md. Mar. 25, 2016). There, the Court summarized these rulings as follows:

4

> Courts in the Fourth Circuit have found similar circumstances sufficient to satisfy the "irreparable harm" element of the preliminary injunction test. For example, in *Sage*, 361 F.3d at 828, the Fourth Circuit affirmed the district court's finding of irreparable harm, noting that the plaintiff "would suffer undue delay" without a preliminary injunction "and that this delay would cause significant financial harm both to [plaintiff] and some of its putative customers." *Id.* at 828 (internal quotation marks omitted). The Court also noted, *id.* at 828-29 (internal citations omitted, alterations in *Sage*):
>
>> Constructing a ninety-four-mile pipeline is a complex project that can only progress in phases. Certain portions of the project have to be completed before construction can begin on other portions. Therefore, as the district court recognized, "any single parcel has the potential of holding up the entire project." Continuing, the court said, "[t]o require ETNG to build up to a parcel of land [it] do[es] not possess, skip that parcel, and then continue on the other side would prove wasteful and inefficient."
>
> Similarly, in *Columbia Gas Transmission Corp. v. An Easement to Construct, Operate, & Maintain a 24-inch Gas Transmission Pipeline Across Properties in Greene Cnty.*, 2007 WL 2220530 (W.D. Va. July 31, 2007), the court found: "Plaintiff will suffer irreparable harm [because] it will be unable to stay on schedule for the construction of the Pipelines and, therefore, may not be able to meet the time requirements contemplated by the FERC Certificate and will delay delivery of natural gas to customers who need it." *Id.* at *4.

(footnotes omitted). These same factors are at work here. Therefore, the Court finds that DCGT has clearly shown it will suffer irreparable harm in the event immediate possession is not granted.

## III.    Balance of the Equities

Granting the requested relief will not harm the Landowners. As set forth in the Ferguson Affidavit in ¶ 16, "[t]here is nothing about the subject properties in this case indicating that they would suffer greater harm if DCGT is granted immediate possession of the easements and allowed to begin construction of the Project in accordance with the construction schedule."

Also, "the Fifth Amendment guarantees the landowners just compensation for their land no matter when the condemnor takes possession." *Sage* at 829. Thus, the Landowners do not lose any rights if DCGT is allowed to take possession at this time rather than after just compensation

is determined. A landowner's personal attachment to the property does not change this analysis.

As found in *Sage*,

> Finally, the landowners argue that taking property before determining just compensation constitutes a type of inherent harm that is irreparable, especially when lands have been held in the same family for many years. We fully understand that condemnation often forces landowners to part with land that they would prefer to keep for many reasons, including sentimental ones. However, the Supreme Court long ago recognized that "in view of the liability of all property to condemnation for the common good, loss to the owner of nontransferable values deriving from his unique need for property or idiosyncratic attachment to it ... is properly treated as part of the burden of common citizenship." *Kimball Laundry Co. v. United States,* 338 U.S. 1, 5, 69 S. Ct. 1434, 93 L. Ed. 1765 (1949). In the end, the district court concluded that the harm to the landowners due to early possession is "slight at best." [] The record supports this conclusion, and any harm to the landowners is clearly outweighed by [the condemnor's] immediate need for the property.

*Id.*

Finally, DCGT has indicated its willingness to deposit an amount representing its determined value of the requested easements into Court or post bond as a condition of the requested relief. This will protect the Landowners' interests while the just compensation portion of this action remains pending and will minimize any harm to the Landowners. *See Sage* at 829 (finding harm "slight at best" when funds representing appraised value of the interests sought were deposited with the Court). The Court finds and sets as a condition of the requested relief that DCGT shall be required to deposit with the Court the amount of $ 3,000.00 (funds representing the jurisdictional limit) prior to taking possession. Therefore, the balance of the equities weighs in favor of granting the relief requested by DCGT.

**IV.   Public Interest**

The requested relief serves the public interest as expressed in the NGA. As recently stated,

> "Congress passed the Natural Gas Act and gave gas companies condemnation power to ensure that consumers would have access to an adequate supply of natural gas at reasonable prices." *Sage*, 361 F.3d at 830. By virtue of the FERC Certificate,

6

> FERC found that the construction and operation of an expanded Line MB pipeline promoted these congressional goals. Furthermore, improvements to aging infrastructure, pipeline safety, and service reliability serve the public interest. . . . Denying immediate access to and possession of the easements would result in a delay in construction, thus delaying the benefit of a pipeline that improves reliability and safety. In turn, this would pose a risk of harm to the public. *See Sage*, 361 F.3d at 826 (recognizing the need for natural gas supply as a "substantial public interest").

*Columbia Gas Transmission, LLC v. 252.071 Acres More or Less*, 2016 WL 1248670, at *17-18 (D. Md. Mar. 25, 2016). Here, FERC has found the Project serves the public interest. Moreover, the public is served by decreased emissions on the part of DCGT's customer following completion of the Project. Given the above, DCGT has satisfied this element of the preliminary injunction analysis.

## CONCLUSION

DCGT has met its burden of showing each of the elements required for the requested preliminary injunction. For these reasons, the Court **GRANTS** DCGT's motion for immediate possession (ECF No. 13) upon the terms set forth in this Order. DCGT shall be entitled to take possession as soon as the required funds in the amount of $3,000.00 are deposited with the clerk of court.

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Judge

August 24, 2016
Columbia, South Carolina

7